FILED
2026 Oct-19 AM 11:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **DWRIGHT ROBERTSON (AIS # 160068),** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CASE NO.: ______________________** |
| **RODERICK GADSON, JR., JAJUAN HOWARD, and TYLER ANDREWS,** | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW**, the Plaintiff, Dwright Robertson, by and through the undersigned counsel and alleges the following:

## PARTIES

1. **Plaintiff Dwright Robertson ("Plaintiff")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. At all times relevant hereto, Plaintiff was in the custody of the Alabama Department of Corrections ("ADOC"), being housed at St. Clair Correctional Facility in Springville, Alabama. Plaintiff is currently housed at William E. Donaldson Correctional Facility in Bessemer, Alabama.

2. **Defendant Roderick Gadson, Jr. ("Defendant Gadson")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. At all times relevant hereto, Defendant Gadson was employed by the ADOC as a Lieutenant at St. Clair Correctional Facility and acted under the color of law.

3. **Defendant Jajuan Howard ("Defendant Howard")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. At all times relevant hereto, Defendant Howard was employed by the ADOC as a Sergeant at St. Clair Correctional Facility and acted under the color of law.

4. **Defendant Tyler Andrews ("Defendant Andrews")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. At all times relevant hereto, Defendant Andrews was employed by the ADOC as a Correctional Officer at St. Clair Correctional Facility and acted under the color of law.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C. § 1343(a)(4), as this action seeks redress for the violation of Plaintiff's Eighth Amendment rights under the Constitution of the United States, pursuant to 42 U.S.C. § 1983.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as they arise from the same case or controversy and are so related to Plaintiff's 42 U.S.C. § 1983 claims.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events and omissions that give rise to Plaintiff's claims occurred within this Court's judicial district.

## FACTUAL ALLEGATIONS

### I. The Events Preceding Defendants' Assault of Plaintiff

8. At all times relevant to this action, Plaintiff was an inmate housed at St. Clair Correctional Facility.

9. On October 19, 2024, Plaintiff, who had recently been transferred to N-Dorm from another dormitory, learned that several inmates affiliated with a prison gang intended to assault him at approximately 6:30 P.M. that evening. The threats arose after Plaintiff was assigned to a cell previously occupied by a gang member, disrupting the gang's preferred housing arrangement.

10. Fearing for his safety, Plaintiff contacted his spouse and instructed her to call the prison at approximately 7:00 P.M. to report the threats against him. Plaintiff told his spouse that inmates had announced they intended to harm him.

11. Plaintiff's spouse called the prison twice that evening to report the threats. Despite her attempts, no one answered the telephone in the control cube.

12. Around the same time, Plaintiff was summoned to the shift office after his sister contacted the prison to notify staff that a member of Plaintiff's family had passed away.

13. While in the shift office, Plaintiff informed Lieutenant Marina that inmates had threatened him and requested placement in protective custody or lockup because he feared for his safety.

14. Lieutenant Marina instructed Plaintiff to write a statement indicating that he "feared for his safety," specifically directing him not to write that he "feared for his life."

15. Lieutenant Marina, along with Officers Will and McCloud, subsequently transferred Plaintiff to K-Dorm. Before placing Plaintiff in his newly assigned cell, correctional officers conducted a search and removed other inmates from the cell.

16. During the search, a cellphone belonging to another inmate went missing. Other inmates blamed Plaintiff for the missing cellphone and demanded that he pay for it, thereby escalating the threats against him.

17. Plaintiff informed Lieutenant Marina that his new housing assignment would expose him to additional danger. In response, Lieutenant Marina warned Plaintiff that if he had to return to the dormitory, he would conduct a shakedown (i.e., search) of the entire dormitory.

18. Throughout the night of October 19, 2024, multiple inmates continued threatening Plaintiff. Plaintiff was pursued and harassed by at least four inmates during the evening.

19. Throughout the night, inmates repeatedly attempted to enter Plaintiff's cell to assault him. As a result of these continued threats and attempted intrusions, Plaintiff was unable to sleep.

20. Rather than intervening to protect Plaintiff, several correctional officers openly encouraged violence against him. Throughout the night, officers repeatedly made statements such as, “Y'all haven’t gotten him yet?” in reference to Plaintiff. Among the officers making or present during these statements were an officer known as Boom Boom, three unidentified white correctional officers, and CERT Team officers Will and McCloud.

21. The following morning, Plaintiff again sought protection by requesting to speak with a supervisor. Defendant Sergeant Howard responded and asked Plaintiff what was wrong.

22. Plaintiff informed Defendant Howard that he feared for his safety because of the ongoing threats from other inmates. Defendant Howard ordered Plaintiff to submit to restraints and escorted him to the shift office.

23. At the shift office, Defendant Lieutenant Gadson met with Plaintiff. Plaintiff once again reported that he feared for his safety. Lieutenant Gadson instructed Plaintiff

to prepare a written statement stating only that he feared for his safety and specifically instructed him not to state that he feared for his life.

24. After receiving Plaintiff's statement, Defendants Gadson and Howard transferred Plaintiff to the Q-2 housing area. Before placing Plaintiff in his assigned cell, another inmate was removed to make room for Plaintiff.

25. Plaintiff immediately informed Defendants Gadson and Howard that the new housing assignment would not resolve the ongoing issues and requested placement in isolation for his protection.

26. Shortly thereafter, Plaintiff became involved in a physical altercation with his cellmate.

27. Plaintiff did not sustain any injuries during the altercation.

**II. Defendants' Brutal Assault of Plaintiff**

28. Other inmates alerted correctional officers to the altercation. Among the responding officers were Defendants and officers Dallas and King.

29. Plaintiff surrendered to the responding officers. Despite his surrender, Officer King grabbed Plaintiff by the throat and told Plaintiff that he would kill him.

30. Plaintiff was then escorted to the infirmary by Defendants for what was purportedly to be a body chart examination. While being transported, Plaintiff heard one of the correctional officers make a statement indicating they were off camera.

31. After arriving at the infirmary, Defendants Gadson, Howard, and Andrews escorted Plaintiff into a room adjacent to the infirmary. Plaintiff was handcuffed and restrained.

32. Defendant Gadson forcibly slammed Plaintiff to the ground. While Plaintiff remained handcuffed, Defendant Andrews held Plaintiff down by his legs, thereby further restraining his ability to move or defend himself.

33. While Plaintiff was restrained on the ground, Defendant Gadson positioned himself on top of Plaintiff, threatened to kill him, repeatedly punched him, and slammed his head against the concrete floor.

34. As a result of the assault, Plaintiff drifted in and out of consciousness.

35. At the time Defendants Gadson and Andrews used force against Plaintiff, Plaintiff was handcuffed, restrained, and under their custody and control. Plaintiff was not resisting the officers, attempting to escape, or otherwise posing an immediate threat to their safety.

36. Defendant Howard stood near the entrance to the room and witnessed Defendant Gadson repeatedly punch Plaintiff and slam his head against the concrete floor while Defendant Andrews restrained Plaintiff by his legs. Despite witnessing the assault and having a realistic opportunity to intervene, Defendant Howard failed to take reasonable steps to prevent or stop the continued use of excessive force.

37. Nurse Joplin, a YesCare nurse working at St. Clair, witnessed at least part of the assault and instructed the officers to stop.

38. Plaintiff was left lying in a pool of his own blood.

### III. Plaintiff's Extensive Injuries

39. Following the assault, a body chart completed on October 20, 2024, documented redness in both eyes, as well as swelling to Plaintiff's nose and both eyes.

40. Significantly, a YesCare Emergency Department referral dated October 20, 2024, explained that Plaintiff was involved in an altercation with "another inmate and DOC." The referral further identified facial and head trauma.

41. As a result, Plaintiff was transported by EMS to UAB Hospital as a Level I trauma patient, where he remained hospitalized for approximately eight days.

42. Upon arrival at UAB, Plaintiff was largely unresponsive and exhibited extensive facial trauma. Due to his altered mental status and inability to adequately protect his airway, medical personnel emergently intubated Plaintiff in the trauma bay.

43. Diagnostic imaging, including a CT scan, confirmed a fracture of the anterior wall of Plaintiff's left maxillary sinus, accompanied by a left facial laceration and hematomas involving the left side of his face and the area surrounding his left eye.

44. Due to the severity of his condition, Plaintiff was admitted to the Medical Intensive Care Unit (MICU) for treatment of respiratory insufficiency and

encephalopathy. Plaintiff required mechanical ventilation and continued intensive medical monitoring.

45. Plaintiff remained intubated for several days due to his altered mental status, encephalopathy, and episodes of apnea. He was not successfully extubated until October 24, 2024, approximately four days after his admission to UAB Hospital.

46. Following extubation, Plaintiff's neurological condition gradually improved. By October 25, 2024, medical personnel documented that Plaintiff was awake, alert, and able to follow commands.

47. Despite improvements in his neurological condition, Plaintiff continued to require hospitalization and medical treatment for the injuries sustained during the assault. Plaintiff remained hospitalized until approximately October 27, 2024, when he was discharged and returned to ADOC custody.

48. Upon Plaintiff's return to St. Clair Correctional Facility, a body chart completed on or around October 27, 2024, documented injuries, including an abrasion to his left elbow, an abrasion to his right medial lower leg, a blister on his right wrist, bruising around his left eye, and an abrasion to his lower lip.

49. As a direct and proximate result of Defendants' actions, Plaintiff suffered severe physical injuries, substantial physical pain and suffering, emotional distress, mental anguish, and a loss of enjoyment of life.

## CAUSES OF ACTION

## FEDERAL CLAIMS

### COUNT I: VIOLATION OF 42 U.S.C. § 1983 EXCESSIVE FORCE

50. Plaintiff adopts and re-alleges paragraphs 1-2, 4-5, 7, 26-35, and 37-49 of this Complaint as if fully set forth herein.

51. This Count is asserted against Defendants Gadson and Andrews.

52. As an incarcerated individual, Plaintiff was entitled to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution, including the unnecessary and wanton infliction of pain by correctional officers.

53. On October 20, 2024, after Plaintiff surrendered following an altercation with another inmate, Defendants Gadson and Andrews, along with Defendant Howard, escorted Plaintiff, while handcuffed and restrained, into a room adjacent to the infirmary.

54. Once inside the room, Defendant Gadson forcibly slammed Plaintiff to the ground. Defendant Andrews then held Plaintiff down by his legs, further restricting Plaintiff's ability to move or defend himself.

55. While Plaintiff remained handcuffed and physically restrained by Defendant Andrews, Defendant Gadson positioned himself on top of Plaintiff, threatened to

kill him, repeatedly punched him, and slammed his head against the concrete floor.

56. Defendant Andrews actively participated in the assault by physically restraining Plaintiff while Defendant Gadson repeatedly struck him. By holding Plaintiff's legs and preventing him from moving or defending himself, Defendant Andrews facilitated and contributed to the excessive force inflicted upon Plaintiff.

57. At the time Defendants Gadson and Andrews subjected Plaintiff to the foregoing force, Plaintiff was handcuffed, restrained, and under their custody and control. Plaintiff posed no immediate threat warranting the use of such force.

58. The force used against Plaintiff was not applied in a good faith effort to maintain or restore discipline. Rather, Defendants Gadson and Andrews acted maliciously and sadistically for the very purpose of causing Plaintiff harm.

59. The amount and nature of the force employed were grossly disproportionate to any legitimate penological need. Defendants continued their conduct despite Plaintiff's surrender, restraints, and inability to resist or defend himself.

60. As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff sustained severe physical injuries, including a facial fracture, extensive facial trauma, and injuries requiring emergency intubation, mechanical ventilation, intensive care, and approximately eight days of hospitalization.

61. Plaintiff further suffered substantial physical pain and suffering, emotional distress, mental anguish, and loss of enjoyment of life.

**COUNT II: VIOLATION OF 42 U.S.C. § 1983**
**FAILURE TO INTERVENE**

62. Plaintiff adopts and re-alleges paragraphs 1, 3, 5, 7, and 30-49 of this Complaint as if fully set forth herein.

63. This Count is asserted against Defendant Howard.

64. At all times relevant to this Complaint, Defendant Howard was a correctional officer employed by the Alabama Department of Corrections and was acting under color of state law.

65. Under the Eighth Amendment to the United States Constitution, Defendant Howard had a duty to take reasonable steps to intervene when he witnessed another correctional officer using excessive force against an incarcerated individual and had a realistic opportunity to prevent or stop the unconstitutional conduct.

66. On October 20, 2024, Defendant Howard accompanied Defendants Gadson and Andrews when they escorted Plaintiff, while handcuffed and restrained, into a room adjacent to the infirmary.

67. Once inside the room, Defendant Gadson forcibly slammed Plaintiff to the ground, while Defendant Andrews held Plaintiff down by his legs, further restricting Plaintiff's ability to move or defend himself.

68. While Plaintiff remained handcuffed and physically restrained by Defendant Andrews, Defendant Gadson positioned himself on top of Plaintiff, threatened to kill him, repeatedly punched him, and slammed his head against the concrete floor.

69. During the assault, Defendant Howard stood near the entrance to the room and witnessed the excessive force being inflicted upon Plaintiff.

70. At the time of the assault, Plaintiff was handcuffed, restrained, and under the custody and control of correctional officers. Plaintiff posed no immediate threat to the safety of the officers or institutional security that would justify the force being used against him.

71. Defendant Howard knew that the force being used against Plaintiff was unnecessary, excessive, and disproportionate to any legitimate penological objective.

72. Despite witnessing the repeated use of excessive force against Plaintiff and having a realistic opportunity to intervene, Defendant Howard failed to take reasonable steps to prevent or stop the continued assault.

73. Defendant Howard's failure to intervene allowed the unconstitutional assault to continue, thereby contributing to the injuries sustained by Plaintiff.

74. As a direct and proximate result of Defendant Howard's failure to intervene, Plaintiff suffered severe physical injuries, including a facial fracture, extensive

facial trauma, and injuries requiring emergency intubation, mechanical ventilation, intensive care, and approximately eight days of hospitalization.

75. Plaintiff further suffered substantial physical pain and suffering, emotional distress, mental anguish, and loss of enjoyment of life.

## STATE CLAIMS

### COUNT III: ASSAULT AND BATTERY

76. Plaintiff adopts and re-alleges paragraphs 1-2, 4-7, 26-35, and 37-49 of this Complaint as if fully set forth herein.

77. This Count is asserted against Defendants Gadson and Andrews.

78. At all times relevant to this Complaint, Defendants Gadson and Andrews were employed as correctional officers with the Alabama Department of Corrections and were acting under color of state law.

79. Under Alabama law, an assault and battery occurs when a person intentionally touches another person in a harmful or offensive manner without legal justification or consent.

80. On October 20, 2024, Defendants Gadson and Andrews intentionally subjected Plaintiff to harmful, offensive, and unjustified physical contact while Plaintiff was handcuffed, restrained, and under their custody and control.

81. Specifically, Defendant Gadson forcibly slammed Plaintiff to the ground, positioned himself on top of Plaintiff, threatened to kill him, repeatedly punched him, and slammed his head against the concrete floor.

82. Defendant Andrews actively participated in the assault and battery by physically holding Plaintiff down by his legs while Defendant Gadson repeatedly struck him, thereby further restraining Plaintiff's movement and preventing him from defending himself.

83. At the time of the assault, Plaintiff had already surrendered to correctional officers, was physically restrained, and posed no immediate threat to Defendants or institutional security.

84. The force employed by Defendants Gadson and Andrews was unnecessary, excessive, and wholly disproportionate to any legitimate need to maintain or restore institutional discipline.

85. Defendants Gadson and Andrews intentionally engaged in harmful and offensive physical contact with Plaintiff without his consent or other lawful justification, thereby committing assault and battery under Alabama law.

86. Defendants' actions were willful, malicious, undertaken in bad faith, and beyond the scope of any lawful authority to use force against Plaintiff.

87. As a direct and proximate result of Defendants' assault and battery, Plaintiff sustained severe physical injuries, including a facial fracture, extensive facial

trauma, and injuries requiring emergency intubation, mechanical ventilation, intensive care, and approximately eight days of hospitalization.

88. Plaintiff further suffered substantial physical pain and suffering, emotional distress, mental anguish, and loss of enjoyment of life.

**COUNT IV: WANTONNESS**

89. Plaintiff adopts and re-alleges paragraphs 1-49 of this Complaint as if fully set forth herein.

90. This Count is asserted against all Defendants.

91. Under Alabama law, wantonness is the conscious doing of an act or omission of a duty with knowledge that injury will likely or probably result.

92. At all times relevant to this Complaint, Defendants owed Plaintiff a duty to refrain from subjecting him to unnecessary and excessive physical force and to exercise reasonable care for his safety while he remained in their custody and control.

93. On October 20, 2024, Defendants consciously and recklessly disregarded Plaintiff’s safety by subjecting him to, actively participating in, or knowingly permitting the use of unnecessary and excessive physical force after Plaintiff had surrendered and was handcuffed and restrained.

94. Specifically, Defendant Gadson forcibly slammed Plaintiff to the ground, positioned himself on top of Plaintiff, threatened to kill him, repeatedly punched him, and slammed his head against the concrete floor.

95. Defendant Andrews actively participated in the assault by holding Plaintiff down by his legs while Defendant Gadson repeatedly struck him, thereby further restricting Plaintiff's ability to move or defend himself.

96. Defendant Howard stood near the entrance to the room and witnessed the excessive force being inflicted upon Plaintiff. Despite his knowledge of the ongoing assault and having a realistic opportunity to intervene, Defendant Howard consciously failed to take reasonable steps to prevent or stop the continued use of excessive force.

97. Defendants knew that their respective actions and omissions would likely or probably result in serious physical injury to Plaintiff, who was handcuffed, restrained, and unable to defend himself.

98. Nevertheless, Defendants consciously disregarded the foreseeable consequences of their conduct and continued to act, or failed to act, with reckless indifference to Plaintiff's safety and well-being.

99. Defendants' conduct constituted wantonness under Alabama law because they consciously engaged in acts, or omitted actions they had a duty to perform, with knowledge that injury to Plaintiff would likely or probably result.

100. Defendants' conduct was willful, malicious, undertaken in bad faith, and beyond the scope of any lawful authority to use force against Plaintiff or knowingly permit such force to continue.

101. As a direct and proximate result of Defendants' wanton conduct, Plaintiff sustained severe physical injuries, including a facial fracture, extensive facial trauma, and injuries requiring emergency intubation, mechanical ventilation, intensive care, and approximately eight days of hospitalization.

102. Plaintiff further suffered substantial physical pain and suffering, emotional distress, mental anguish, and loss of enjoyment of life.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests this Honorable Court enter a judgment in his favor and against Defendants, both jointly and severally, for the following relief:

a. Compensatory damages for emotional distress, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages in an amount to be determined by a jury;

b. Nominal damages in an amount to be determined by a jury;

c. Punitive damages in an amount to be determined by a jury;

d. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

e. All other and further monetary and/or equitable relief as this Honorable Court may deem just and proper.

**JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Respectfully submitted on this 16th day of October 2026.

*/s/ Kristen E. Gochett*
Leroy Maxwell, Jr.
Kristen E. Gochett
*Attorneys for Plaintiff*

**OF COUNSEL:**
**Maxwell, Tillman & Coleman**
1820 3rd Avenue North, Suite 300
Birmingham, AL 35203
Phone: (205) 216-3304
Fax: (205) 409-4145
Email: maxwell@mxlawfirm.com
Email: kgochett@mxlawfirm.com

**DEFENDANT(S) SERVED VIA CERTIFIED MAIL AND/OR PRIVATE PROCESS SERVER.**

*/s/ Kristen E. Gochett*
OF COUNSEL